The opinion of the Court was delivered by
Levy, J.
The plaintiff as owner of certain lands contiguous to the railroad, at and near Mounds Station, brought suit against the Vicksburg, Shreveport and Pacific Railroad Company, ci aiming ten thousand dollars as damages, resulting from the establishment and carrying on, on the depot lands and buildings, of a mercantile business by said Company and its agent, and praying for the abatement of said business, on the *625 ground of its being a nuisance and injurious to plaintiff, and unauthorized and illegal, under the expropriation of said laud or depot grounds to the uses of the Railroad Company.
There was judgment in the lower court in favor of the defendant Company, rejecting plaintiff’s demand.
The admitted facts are as follows :
The plaintiff was, in 1857, joint owner of a tract of land in Madison Parish, as heir of his deceased father, Anthony Hoggatt.
In 1857, the Vicksburg, Shreveport and Texas Railroad Company brought suit under the expropriation Act of 1855, against the succession of Anthony Hoggatt, for a tract of land which the Company claimed to be necessary for the purposes of their railroad. The Company obtained judgment for a tract or strip of the land one hundred feet wide, and ft. long, containing 48‡ acres.
Upon this tract of land the Company laid its track and built a depot known as “ Mounds Station.”
The Company employed one Freind L. Maxwell, in September, 1872, as depot agent at this place, and in consideration for his services as agent, the Railroad Company agreed that he should carry on a mercantile business in the depot huildincj.
This permission was in full compensation for his services as agent.
This mercantile business was carried on by the agent upon the terms stated, from September, 1872, until the present time, and still continues.
The depot of the Company, in which this business is carried on, consists of three rooms, one an office of the Company, also used by Maxwell, as merchant, 20x18 feet, and another room, 17x26 feet, used as a ware-room for the Company, and a third room, 70x22 feet, with an L. 17x24 added, known as the mercantile establishment, and is used for general mercantile pursuits, and when the Company is crowded with freight, it is sometimes stored.
It is also admitted that plaintiff is sole owner of all that tract through which the Railroad passed, and of the land adjoining and contiguous to the property expropriated by the Railroad Company at Mounds Station. That plaintiff erected a store building in September, 1869, which has, from that date until the present time, been used for mercantile pursuits.
That plaintiff notified the Company to stop the mercantile business at the depot. These are the admitted facts.
In support of his demand, plaintiff contends that the Railroad Company acquired the lands from the succession of Anthony Hoggatt, under the expropriation proceedings in 1857, contradictorily with the heirs of that succession, it being private property, for the purposes and uses thereof, as claimed in those proceedings, and as a public use by said corporation limited to the general public objects necessary for carrying *626 on said Railroad Company’s operations, and that that property, thus taken, cannot be diverted from these purposes, and used for a purpose different from that for which it was expropriated, and this, no matter whether the mere easement was acquired, or a fee simple, and if diverted, the Company should not only be compelled to abate the bus-’ incss, as a public and a private nuisance, but is liable for damages which may be caused to the original owners and contiguous proprietors.
Defondant resists plaintiff’s demand on the ground that it became the absolute owner in fee simple of the said lands and grounds, tlieir full value and collateral damages having been demanded by, and payment therefor made to the original owners, and having acquired perfect ownership, has the unlimited right of disposal and enjoyment, and this perfect ownership being' perpetual, consists of the urns, fmotus and abusus.
In the suit for expropriation, the plaintiff prayed that the “lands aforesaid be adjudged and decreed to plaintiff upon payment of all such damages as may be sustained, in consequence of the expropriation of said lands.”
In'their answer, defendants prayed “that plaintiff’s demand be rejectod at tlieir costs, or if judgment shall bo rendered .expropriating the land .for said corporation, then, that defendants have judgment against them for the value of the land, and $10,000 damages, sustained by said succession.”
There wasg'udgment that “ the land set forth and described in plaintiff’s petition, and the plat annexed, be expropriated to the use of the plaintiff as prayed for, upon the payment to the defendant of the sum of $1,448,” etc.
Article 2630 R. C. C., which prescribes the mode of proceeding in the compulsory transfer of property, requires that the petition shall contain “ a prayer that the land be adjudged to such corporation, upon the payment to the owner of all such damages as he may sustain, in consequence of the expropriation of his land for such public work.”
Art. 2632 requires that the jury shall “ determine what is the value of the land described in the petition, with its improvements, and what damages, if any, the owner would sustain, in addition to the loss of his land by its expropriation.”
The charter of the Company is perpetual, although its duration was first limited to twenty-five years, the legislature subsequently made it perpetual.
We think the absolute right and estate in an.d to the laud vested in the Company by the judgment of expropriation, but at the same time we think the land could only be expropriated and used for the pur *627 poses of the railroad in the interest of the public, and its use confined to necessary legitimate railroad purposes.
“The interest of a Railroad Company in its location, although technically an easement, is not limited to an ordinary right of way, such as is required by highways, but it justifies a use of the land for all the purposes of a railroad.” Pierce on Railroads, 159.
“ The Company cannot, as to land taken under the right of emiuent domain, do acts which, though lawful in a private land owner, are altogether outside of railroad purposes." Ib. 160.
In 34 N. J. 201, it ivas held : “ The true rule is, that land taken by the public for a particular use, cannot be applied, under such a sequestration, to any other use, to the detriment of the laud owner. This is the only rule which will adequately protect the constitutional right of the citizen. To permit land taken for one purpose, and for which the land owner has been compensated, to be applied to another and additional purpose, for which he has received no compensation, would be a mere evasion of the spirit of the fundamental law of the State.”
Individual property can be compulsorily appropriated by the public only for public use. Dillon on Mun. Corp. § 460 ; 6 How. 545; 6 McLean, 517.
“ Since the power to condemn private property against the will of the owner is a stringent and extraordinary one, based upon public necessity as an urgent public policy, the rule requiring the power to be strictly construed, and the prescribed mode for its exercise strictly followed, is a just one, and should, within all reasonable limits, bo inflexibly adhered to and applied.” Dillon on Mun. Corp. § 469.
We are thus confirmed in our opinion by the authorities just cited, and in this case the question presented for our consideration and decision remains: Is the land referred to, used for railroad purposes, or has the Company diverted its use from that contemplated in its demand for expropriation and its actual expropriation ?
The business complained 5f, is not and has not been carried oil by the Railroad Gompany, but iscarried on in the premises, located on the expropriated lands, by Maxwell, as his private business, and for, and onliis own account, the Company assenting thereto and granting the use of its building for that purpose, in consideration of Maxwell’s services, without any other compensation or remuneration, as agent of the Company at the station or depot. The land was expropriated for a depot or station, for the construction of necessary buildings as a station, and for sidings, etc., usual and necessary at such places; and its main and principal use is for the purposes stated.
It is not contended that the Company is itself carrying on or actually and directly engaged in mercantile business on said premises, or that any *628 of tlie buildings oil tbe land were constructed for tbe purpose of carrying on snob business, or that they wore constructed with any such view. We rather infer that they are such buildings as are necessary for depot or station purposes, and are in the main used therefor. In lieu of stipulated money wages or pecuniary compensation, the Company allows to its agent the use, to a certain extent, of a portioij of tho building, in which tho agent, for his own account, keeps a store and carries on mercantile business, while the admission shows that the rooms which ho thus uses, are also used by the Company for storing freight, whenever needed for that purpose. We do not feel justified, therefore, in saying that the Company is diverting the expropriated property from the purposes and uses for which it was acquired, and that there is such a diversion as would authorize an interference, nor do wo think the plaintiff can maintain his demand for damages.
The judgment appealed from is affirmed at costs of appellant.
Rehearing refused.
Justice Todd dissents, and reserves his right to assign his reasons therefor.